GULF REFINING CO. v. JACKSON.
(No. 10096.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 20, 1923. Rehearing Denied March 10, 1923.)

1. Negligence ☞134(3)—Evidence held to show engine foreman opening refining company's gate was invitee, and that gate was defective.

In action by engine foreman of belt line railway company for injuries from defective gate of defendant oil refining company, evidence held sufficient to sustain allegation of plaintiff that defendant was negligent in patching up the gate and offering it for use in that condition, and that plaintiff, in attempting to enter the gate, was not a volunteer, but was at least an invitee.

2. Negligence ☞134(11)—Evidence held not to raise issue of contributory negligence but to show negligence was proximate cause of injury.

In action by engine foreman of belt line railway company for injuries from defective gate of defendant oil refining company, evidence held not to raise the issue of plaintiff's contributory negligence in attempting to enter the gate, and to sustain the allegation of the complaint that the injury was negligently inflicted, and that such negligence was the proximate cause of the injury.

3. Trial ☞248, 252(11)—Instruction as to right of volunteer to recover for injuries held abstract, and not sustained by evidence.

In action by engine foreman of belt line railway company for injuries from defective gate of defendant oil refining company, the court properly refused to instruct that one who volunteers to do an act in which he sustains an injury cannot recover damages against the person whom he volunteers to assist, as being inapplicable to the evidence, and as tendering an abstract proposition of law, and not seeking to apply the law to any facts in the case.

4. Master and servant ☞361—Railroad engineer opening gate of refining company held not servant of company within Workmen's Compensation Law.

Where belt line railway company's engine foreman was injured by defective gate of refining company when opening it for the purpose of getting cars, such injury was in the performance of his duties to the railway company, his employer, although he was performing a service for the refining company; hence he was not a servant of the refining company as respects the application of the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.).

5. Master and servant ☞88(1)—Servant performing duty of employment for benefit of third person is not servant of third person.

One may perform a duty in the performance of his services to his master, which is for the use and benefit of a third person, without becoming the servant of such third person.

6. Release ☞29(1)—Release to railroad company held not to affect liability of another not joint tort-feasor.

Where belt line railway company's engine foreman was injured by defective gate of refining company when opening it for the purpose of getting cars, the settlement of the engine foreman with the railway company held not to affect the liability of the refining company for the injury; it appearing from the evidence the railway company and the refining company were not joint tort-feasors, and that the payment to the engine foreman was in effect a donation to him as a valued employé.

Appeal from Tarrant County Court; W. P. Walker, Judge.

Action by J. S. Jackson against the Gulf Refining Company. From judgment for plaintiff, defendant appeals, and plaintiff cross-assigns error. Reformed and affirmed.

R. E. Hardwicke and R. E. L. Batts, both of Fort Worth, for appellant.

Capps, Cantey, Hanger & Short, of Fort Worth, for appellee.

BUCK, J. J. S. Jackson sued the Gulf Refining Company for damages, alleged that he was employed as an engine foreman for the Fort Worth Belt Railway Company, and that in the pursuance of the business of his employer the engine under his charge on the night of September 11, 1920, was required to go into the yards of the defendant to get some oil tank cars; that the defendant had its yards inclosed by a fence, and that, in order to get inside the premises, it was nec-

---

essary to open a heavy wire or iron gate; that the defendant did not provide a man to open said gate, and that it was necessary for plaintiff to open the same, and in so doing he was performing a service for the use and benefit of the defendant; that on the night in question, when plaintiff attempted to open the gates, there being two large gates with a post between, the same were in a defective condition, in that one of the gates was "broken down and wobbly," and was not sufficiently hinged or fastened to the gatepost. In attempting to unfasten and open said gates plaintiff got his right hand caught and his thumb mashed and bruised. He alleged that he was disabled and incapacitated to do any work for 37 days, and that his pay at that time was $7.35 per day, making a total of $268.35, for which he sued. He further alleged that he was caused to suffer great physical pain and mental anguish, and by reason of this item he asked $250.

. Defendant answered by way of a general demurrer and certain special exceptions, and a general denial, and specially denied that it owed any duty to the plaintiff whatever, and specially pleaded that, if it should be determined that the plaintiff was the servant of the defendant at the time, the defendant was a subscriber under the Texas Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), and carried insurance to compensate injuries to its employés with an insurance company.

The cause was submitted to a jury under a general charge, and a verdict was rendered for the plaintiff in the sum of $450. On a motion for a new trial by the defendant, it was made to appear that the plaintiff had received $125 from the belt railway company, and the court reformed the judgment theretofore entered, and gave judgment for the sum of $325. From this judgment the defendant has appealed. Plaintiff, appellee here, has cross-assigned error to the action of the court in reforming the judgment as heretofore stated.

[1] Appellant's first proposition is that in attempting to open the gate plaintiff was a volunteer; that defendant had employed a watchman, one of whose duties was to open the gates and admit the engines coming into the premises for the purpose of getting cars. The testimony of defendant, and a number of other fellow employés, was to the effect that for a long time it had been the custom of the employés of the belt railway company when approaching the gates in question to dismount from the engine and open the gates over the switch tracks, and that no watchman was provided by the appellant for the purpose of opening the gates until after this accident.

S. R. Brookshiner, witness for plaintiff, testified as follows:

"During the time that I went in there and entered the gate, prior to September 11th, right up until the time of the accident there had not been any watchman or gateman maintained there by the Gulf Refining Company to open those gates when an engine would come up to go into the plant. After the accident happened there has been a watchman there to open the gates. Up to the time of the accident there had not been anybody there to open the gates, that I had seen. I always call for the gates now, but up until then I did not call for them to be opened. At that time the engine foreman always opened them, or one of his helpers— the engine foreman or one of his helpers."

From the testimony of O. L. Messick, the plaintiff, and others, it appears that the gates were some 17 feet long and from 6 to 8 feet high; that just prior to the accident an engine had come into the plant to get cars, and that the watchman had closed one of the gates and the engine in backing out had run into the gate, and bent it so that they did not meet; that immediately the defendant ordered the damaged gate to be replaced with a new one; that such gates could not be bought in the open market, but must be made, and the defendant gave the order to a local concern for a new gate; that in the meantime the gate was patched up by wiring onto it another gate, and that the gates so wired fell down when plaintiff attempted to open the same and mashed his thumb.

We think the evidence is sufficient to sustain the allegation of the plaintiff that the defendant was guilty of negligence in patching up the gate as it did, and offering it for use in that condition, and that plaintiff in attempting to enter the gates as he did was at least an invitee.

"Invitation by the owner or occupant [of the premises] is implied by law where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured is present in the performance of duty, official or otherwise. Invitation will also be implied from such long acquiescence as reasonably to give rise to the inference that it is invited." Bustillos v. Southwestern Cement Co., 211 S. W. 929, by the Commission of Appeals, and adopted by the Supreme Court.

[2] Nor do we think that the evidence raises the issue that plaintiff was guilty of contributory negligence in attempting to enter the gate as he did. We further find that the evidence sustains the allegation that the injury to defendant was negligently inflicted, and that such negligence was the proximate cause of the injury. Therefore we overrule propositions 1 to 4 inclusive.

[3] The fifth proposition is to the failure of the court to give the following special instruction:

"You are instructed that the law is as follows: One who volunteers to do an act in which he sustains an injury cannot recover damages against the person whom he volunteers to assist."

In the first place, we think the evidence sustains appellee's contention that he was not a volunteer in attempting to enter the gates as he did, but was acting in the performance of his duty as an employé of the railway company, which duty was for the common benefit of the railway company and the defendant. Moreover, the charge tendered is an abstract proposition of law, and does not seek to apply the law to any facts in the case. 38 Cyc. § 7, p. 1625, says:

"It is not the proper course for judge to lay down the general principles applicable to a case and leave the jury to apply them; but it is his duty to inform the jury what the law is as applicable to the facts of the case."

[4] Complaint is made in another assignment to the refusal of the court to permit Herman Taylor, defendant's superintendent, to testify that the defendant was a subscriber under the Workmen's Compensation Act. This assignment involves the state of the evidence as to whether the facts make the issue of the plaintiff being an employé of the defendant. If plaintiff was not an employé of the defendant, he would not be entitled to compensation under that act for any injuries inflicted upon him. The evidence showed unmistakably that plaintiff was an employé of the Fort Worth Belt Railway Company, and was not in the employment of the defendant, nor loaned to it. The appellant bases its claim that the evidence raises the issue as to whether plaintiff was an employé of the defendant on the following allegation in plaintiff's petition:

"When the engine approached the gates across said track, it became necessary for plaintiff to open said gates in order for said switch engine to pass in the refinery premises and pick up said cars of oil; that defendant did not provide a man to open said gates, and it was necessary for plaintiff to open the same, and in so doing plaintiff was performing a service for the use and benefit of the defendant, and it was defendant's duty to provide safe gates to use over said tracks."

[5] One may perform a duty in the performance of his services to his master which is for the use and benefit of a third person, without becoming the servant of such third person; and we think the evidence sustains the conclusion that such was the condition in the instant case. In the case of M., K. & T. Ry. v. Reasor, 28 Tex. Civ. App. 302, 68 S. W. 332, writ denied, the Court of Civil Appeals held that the petition was sufficient to justify a charge that, even though plaintiff was on the train as an express messenger, if he, during the time he acted as messenger, also served the defendant as baggageman on such train, and if he did so with the knowledge and approval of the defendant, it owed to him a duty to use ordinary care to avoid injuring him; that an express contract was not necessary to create the relation of master and servant. But no such facts were alleged or proven in the instant case. In going into defendant's premises for the purpose of getting cars, plaintiff was performing his regular duties for his employer, the railway company, though in the performance of such duties he may have been performing a service for the use and benefit of the defendant. But such facts do not raise the issue of whether plaintiff was an employé of the defendant, and the assignment is overruled.

[6] Upon the hearing on the motion for a new trial, the defendant proved that some time after the injury, and pending the trial in this case, plaintiff had been paid $125 by the railway company, and had executed to the railway company a release, which is as follows:

"Fort Worth Belt Railway Company, Fort Worth, Tex.: In consideration of the sum of one hundred and twenty-five dollars ($125.00) to J. S. Jackson, this day paid by the Fort Worth Belt Railway Company hereby release said Fort Worth Belt Railway Company from all claims, demands and causes of action against the Fort Worth Belt Railway Company, which have accrued, or may hereafter accrue, to J. S. Jackson for all damages of every nature whatsoever received in and resulting from an accident at or near Fort Worth, Tex., on or about the 11th day of September, 1920, in which J. S. Jackson sustained injury. Said sum of money is accepted by the undersigned in settlement for all damages, injuries and disabilities, which may hereafter result from said accident, as well as for those now known to have been caused thereby, and this instrument shall fully release the Fort Worth Belt Railway Company. It is expressly understood and agreed that said sum is paid and accepted not only for time and wages lost, expenses incurred and property damaged and destroyed, but also in full and final settlement of all claims of every nature, caused by said accident. To secure this settlement and the payment of said sum I hereby rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of said injuries, disabilities and damages, and that no representations of statements about them, made by said Fort Worth Belt Railway Company or their representatives or agents, have influenced me in making, nor induced me to make, this settlement. No promise of employment nor other agreement not herein expressed has been made by said Fort Worth Belt Railway Company, nor by any of their officers, representatives, agents, or employees. In testimony whereof I have hereunto set my hand this 17th day of December, 1920.

"[Signed]                    J. S. Jackson."

In connection with the introduction of this release plaintiff testified as follows:

"I went down to see Mr. Lovell (traffic manager of the railway company). I had been out of work, and had a little money coming for a short time. I was talking to him about it and he said if I would sign a release they would donate me $125 for the time I had lost. I was out of employment and had no money. I did not make any claim against the belt line railway for damages for the injuries which I sustained in opening the gate of the Gulf Refining Company and out of which this suit arose. I did not make a claim against the belt line railway because they were not to blame at all. At the time I executed the release something was said about my releasing my claim against the Gulf Refining Company. I read the release over and I noticed that where it said 'and all concerned—all corporations,' and I did not sign it. I told Mr. Lovell to mark it out. It was the agreement that I was only releasing the belt, and I was not in any way to waive or release my right to a claim or a suit against the Gulf Refining Company. This $125 was a donation; that is what Mr. Lovell said at that time, because I didn't hold the belt railway company responsible in any way. I had been in the employment of the belt for some time, and I was out of work as a result of the injury to my thumb 37 days, and Mr. Lovell simply offered to give me $125 to help out."

Mr. Lovell testified that plaintiff was an old employé of the company, and at the time of the payment of the $125 the railway company was in need of men, and that they were anxious for plaintiff to go to work; that it was understood at the time that the railway company was not responsible for the injury, and that he told the plaintiff that, so far as the belt was concerned, they had no objection to his handling the matter with the Gulf Refining Company to secure any damages that he might be able to get; that after the release was executed he handled considerable correspondence for the plaintiff with the defendant company, and asked it to compensate him for his injuries.

We do not think that the evidence raises the issue as to whether the railway company and the defendant were joint tort-feasors. At least the evidence sustains the conclusion that the plaintiff did not regard the railway company as in any way responsible for his injuries, and that the payment of the $125 to him was in effect a donation by his employer to a valued employé. In E. P. & S. R. Co. v. Darr (Tex. Civ. App.) 93 S. W. 166, writ of error denied, cited by appellant, it is said:

"We interrupt our discussion of the effect of the release to say that parol evidence as to what was the intention of the parties to the release was clearly admissible,"

citing authorities, thus supporting our conclusion that by the release above set out the plaintiff did not release the defendant from liability. Reference may be made to 23 R. C. L. p. 426; Ky. & I. B. Co. v. Hall, 125 Ind. 290, 25 N. E. 219; M., K. & T. Ry. Co. v. McWherter, 59 Kan. 345, 53 Pac. 135; Pickwick v. McCauliff, 193 Mass. 70, 78 N. E. 730, 8 Ann. Cas. 1041; P. & N. T. Ry. Co. v. Lovelady & Pyron, 39 Tex. Civ. App. 239, 87 S. W. 710; Merchants' Nat. Bank v. McAnulty (Tex. Civ. App.) 31 S. W. 1091.

Appellee assigns error by cross-assignment to the action of the court in deducting from the recovery had the sum of $125, the amount paid by the belt railway company. Inasmuch as we think the evidence shows that the railway company was not a joint tort-feasor with the defendant, and that a settlement, if it should be so termed, with the railway company would not affect the liability of the defendant, and that any payment by the railway company was in effect a donation to its employé, we conclude the cross-assignment should be sustained, and the judgment reformed so as to allow plaintiff the full recovery had, to wit, $450, and as reformed affirmed.

All of appellant's assignments of error are overruled, and the judgment as reformed is affirmed.