## TEXAS ELECTRIC SERVICE CO. v. KINKEAD.

### No. 12393.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 13, 1930.

Rehearing Denied Jan. 17, 1931.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellant.

Fitzgerald & Hatchitt and Otis Nelson, all of Wichita Falls, for appellee.

DUNKLIN, J.

The Texas Electric Service Company has appealed from a judgment against it in favor of L. D. Kinkead for $25,000 as damages resulting from an injury sustained by him when struck by a Ford truck driven by Fred K. Everetts in the city of Wichita Falls while he was engaged in the sale of washing machines owned by the defendant. The suit was based upon allegations of negligence of the driver of the truck in operating the machine at a dangerous rate of speed and in failing to sound the horn of his machine as he approached the place where the accident occurred.

There were findings of the jury sustaining those allegations of negligence and a further finding that the same were the proximate cause of plaintiff's injury. There was another finding of the jury that at the time and place the accident occurred the driver of the truck was the agent of the defendant Texas Electric Service Company. In connection with the submission of that issue, the court gave this definition: "An agent is one who acts for another by authority from him; one who undertakes to transact some business or manage some affairs for another by his authority. The term agent applies to any one who performs an act for another by his authority."

According to allegations in plaintiff's petition as driver of the truck, Everetts was the agent and servant of the defendant, who therefore was liable for damages resulting from his negligence in operating the machine.

In addition to a plea of general denial, the defendant filed a special plea denying that Everetts was its agent, servant, or employee, but that he was the agent, servant, and employee of the Texas Power & Light Company in driving the truck at the time in controversy. It was further alleged that the Texas Power & Light Company was an independent contractor and engaged in demonstrating and selling washing machines for the defendant, and that Everetts in driving the truck was under the exclusive control of the Texas Power & Light Company and not under the control, management, or direction of the defendant, but "on the contrary this defendant had nothing to do with him, and did not have the right of power or authority to control his actions or direct his actions, or the manner and way of doing and performing said services, but the entire control, supervision and management of said driver of the truck in question was under the direction of the Texas Power and Light Company."

In reply to that special plea, the plaintiff filed a supplemental petition containing a general denial of the allegations in that special pleading, and in addition thereto pleaded specially, in substance, that the Texas Electric Service Company and the Texas Power & Light Company were in fact jointly engaged in the same business under two separate corporate names, adopted for their own convenience, and that the driver of the truck at the time in controversy was in fact the agent, servant, and employee of each. In the alternative plaintiff pleaded further that at the time of the accident the two companies were partners and jointly engaged and jointly interested in the sale and distribution of washing machines, one of which was being transported by Everetts at the time of the accident, and therefore that the two corporations were jointly and severally liable to plaintiff as joint tort-feasors.

Evidence offered showed that the defendant and the Texas Power & Light Company operated under two separate charters, and both had their principal offices in the city of Dallas.

In support of its plea that the relation of master and servant did not exist between the defendant and Everetts at the time of the accident, that Everetts in driving the truck was the servant of the Texas Power & Light Company, and that the latter company, through its servant, Everetts, was undertaking to sell washing machines for the defendant as an independent contractor, testimony was introduced sufficient, prima facie, to support findings of facts as follows:

Everetts was employed by and on the pay roll of the Texas Power & Light Company, and was working under the direction of G. B. Richardson, who was the manager of the merchandise sale department of the last-named company; Everetts being the sales superintendent for that company. According to the testimony introduced, Everetts only connection with the defendant company arose by rea-

son of the following transactions, as stated in appellant's brief:

"The Texas Electric Service Company from time to time purchased of the Texas Power & Light Company various and sundry merchandise, including radios, washing machines, and other merchandise of similar nature. Some time prior to the accident in question the Texas Electric Service Company purchased from the Texas Power & Light Company a number of washing machines. As a part of the contract of purchase, the Texas Power & Light Company agreed that when the Texas Electric Service Company desired to put on a sales campaign to move these washing machines, that the Texas Power & Light Company would send one or more of its sales teams to Wichita Falls to assist in putting on such a campaign. A few days before the accident in question, The Texas Electric Service Company requested the Texas Power & Light Company to send one of its sales teams, or crews, to Wichita Falls to assist in putting on a campaign to move certain washing machines which they had previously bought from the Texas Power & Light Company and which, as stated, the Texas Power & Light Company had agreed to send men to Wichita Falls for the purpose of such a campaign.

"It was the agreement that these crews were to be sent to Wichita Falls without expense to the Texas Electric Service Company, and while the crew in charge of Everetts at the time of the accident were in Wichita Falls, they were on the payroll of, and subject to control by the Texas Power & Light Company, there being no agreement between the Texas Power & Light Company and the Texas Electric Service Company that the Texas Electric Service Company should have the right to direct the manner of their salesmanship while in Wichita Falls, nor did it do so.

"When these teams came to Wichita Falls, (and this applies with regard to the team that was here when the accident to appellee occurred) the manner of procedure was as follows:

"Everetts, the sales superintendent and the party in charge of the crew, was directed by Mr. Richardson, his immediate superior and the manager of the merchandise sales department of the Texas Power & Light Company, to proceed with his crew to Wichita Falls to put on a campaign to sell certain washing machines which the Texas Power & Light Company had theretofore sold to the Texas Electric Service Company. At the time in question he came to Wichita Falls upon the orders that Mr. Richardson gave him, and upon arrival in Wichita Falls went to the office of the Texas Electric Service Company. He obtained from the manager of the sales department of the Texas Electric Service the necessary contract papers to sell such machines and to carry on the work. He also got a sample washing machine from the Texas Electric Service Company for demonstration purposes. He then (and this applies to the procedure followed at the time of the accident) used the car furnished him by the Texas Power & Light Company, and he and his men would go out in the residential district of Wichita Falls, Texas, and solicit such customers as they saw fit. The Texas Electric Service Company did not attempt to tell Everetts or his men when to work, how many hours to work, or what parts of town to visit, or what customers to interview, but this was done solely by Everetts upon his own initiative, and according to his instructions and orders from his superior, Richardson, of the Texas Power & Light Company. If they made a sale, Everetts then took the contract to the Chief Clerk of the accounting department of the Texas Electric Service Company, who passed upon the financial responsibility of the purchaser. This was done with reference to the responsibility of Olin W. White on the 23rd day of March, 1927. Other than passing upon the financial responsibility of the purchasers, and either approving the sale made by Everetts, or refusing it because of the credit standing of the proposed purchaser, the Texas Electric Service Company played no other part in the solicitation and sale of the machine.

"On the date in question, Everetts, with his crew, had been out on Taft Street in the City of Wichita Falls. They had been delivering a washing machine which they had sold out there. They had previously canvassed that section of the town, had sold the washing machine, given a demonstration and made an appointment. They had a washing machine in the car at the time of the accident. They had started to Scotland Addition across the river and had gone down Elizabeth Street and from Elizabeth Street onto Fourteenth Street and were coming down Fourteenth Street in the direction of the business section of the town when the accident occurred."

Before the submission of the special issues to the jury, the defendant filed written objections and exceptions to the court's definition of the word "agent" and the submission of the issue of agency of the driver of the truck within the meaning of the definition so given. The objections so made were, in substance, that the evidence introduced showed that the relations of master and servant between the defendant and Everetts did not exist, but that Everetts was the servant of the Texas Power & Light Company in operating the truck at the time of the injury; that liability of defendant for Everetts' tort could not be established in the absence of a showing of the relation of master and servant between it and Everetts; that, in driving the truck at the time of the accident, Everetts was performing a service for the Texas Pow-

er & Light Company as his master who had employed him to perform that service and who had the exclusive right and authority to employ and discharge him and to direct and control his services; and that the Texas Power & Light Company in undertaking through its servant Everetts to aid the defendant in the sale of the washing machines was doing so as an independent contractor; and that the definition of the term "agent" as used in the court's instruction was too broad, in that its effect was to eliminate and deprive the defendant of its defense of independent contractor.

In its objections to the court's charge, there was a further request for the court to give a correct charge on the issue of agency. The defendant also requested the submission of several special issues, all of which were refused; one of them being as to whether or not the defendant was interested only in the ultimate result of the work being performed by Everetts; another whether or not at that time the defendant had the right to discharge Everetts from the service; another whether or not it had the right to direct and control "the manner of sales of said washing machines and the said campaign put on in Wichita Falls and the duties thereof."

Assignments of error have been presented to the rulings of the court referred to, and particularly to the definition of "agency" given in the court's charge. The following excerpts from the authorities are applicable to the questions arising under these assignments:

"The relation of master and servant exists where the employer selects the workman, and may remove or discharge him for misconduct, and may order not only what work shall be done, but the mode and manner of performance.

"To constitute the relation of master and servant for the purpose of fixing liability on the former for acts of the latter under the doctrine of respondeat superior, it is indispensable that the right to select the person claimed to be a servant should exist. Furthermore something more than the mere right of selection is essential to the relation. This right must be accompanied with the power and duty to control the alleged servant while in his employ; this, it is said, is one of the principal tests of the relation. If workmen do not stand in such relation to the person sought to be charged as to make it his duty to control them, they are not his servants and he is in no sense responsible for their acts under the doctrine of respondeat superior. Where the person employed is in the exercise of an independent and distinct employment, and not under the immediate control, direction and supervision of the employer, the latter is not responsible for the acts of the former." 39 Corpus Juris, p. 1269, §§ 1453 and 1454.

"The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done and the party who is to do the work, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be executed. This attribute of the relation supplies the single and universally applicable test by which the servants are distinguished from independent contractors." 1 Labatt's Master and Servant, § 64.

"There is a marked distinction between the liability of the master for the acts of an ordinary servant in the usual scope of his duties as such, and that of an employer for the acts of an independent contractor.

"This distinction rests upon the reasonable principle that, in a proper case, the liability of the master should be commensurate with the extent only of his right to control. [Citing cases.]

"In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and hence his corresponding liability for an improper execution of the same. (Wood on Master and Servant, sec. 281.)

"'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details.' (Shear. & Red. on Neg., sec. 73).

"In the second relation, that of employer and independent contractor, there is no such control and direction by the employer over the servant in the details of the work.

"'The true test * * * by which to determine whether one who renders service to another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished.' (Shear. & Red. on Neg., secs. 76—79; 1 Red. on Railways, 505; Pack v. Mayor of City of New York, 4 Seld. [8 N. Y.] 222.)" Cunningham v. Ry. Co., 51 Tex. 503, 32 Am. Rep. 632.

"As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control,—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers

which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof; where the employee represents the will of the employer as to the result of the work but not as to the means or manner of accomplishment, he is an independent contractor." 14 R. C. L. p. 68, § 4.

Pertinent to the matter of instructions by defendant's manager in Wichita Falls, given to the truck driver, we cite the following:

"Much stress is laid upon the fact that the winchman obeyed the signals of the gangman, who represented the master stevedore, in timing the raising and lowering of the cases of oil. But when one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be co-operation and co-ordination, or there will be chaos. The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience to those signals showed co-operation rather than subordination, and is not enough to show that there has been a change of masters." Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 256, 53 L. Ed. 480.

"While the general rule is that a master is liable for the acts of his employee done within the scope of his employment, it is equally well settled that the rule applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of the wrong at the time of the injury; and in respect of the very transaction out of which the injury arose. In other words, if this is not shown, the doctrine of respondeat superior does not apply." 39 Corpus Juris, p. 1268, § 1452.

To a like effect:

"As an independent contractor is conceived to be a person who merely agrees to execute a specific piece of work, and is not under the direction of his employer, it necessarily follows that under ordinary circumstances the servants hired by him for the purposes of the work do not stand in the relation of servants to his employer.

"Except in a few well-defined situations, which will be discussed later, the principal employer is not liable for an injury caused by the wrongful act of a servant of the contractor. In those jurisdictions in which the common law has been so far changed by statute as to enable a servant to maintain an action against his master for an injury caused by the negligence of a coservant, the liability of the employer is negatived by evidence which shows that the wrongdoer was not in his service." 1 Labatt's Master and Servant, §§ 34 and 36.

See, also, McLeod v. Security Union Ins. Co. (Tex. Civ. App.) 22 S.W.(2d) 952; Gulf Ref. Co. v. Jackson (Tex. Civ. App.) 250 S. W. 1080; Trachtenberg v. Castillo (Tex. Civ. App.) 257 S. W. 657; Hooper v. Brawner, 148 Md. 417, 129 A. 672, 42 A. L. R. 1437.

"Although all three are, in a large sense, agents, yet in ordinary legal usage the agent —and the servant also—is further to be distinguished from the 'independent contractor,' who is one who exercises some independent employment, in the course of which he undertakes, supplying his own materials, servants and equipment, to accomplish a certain result, not being subject while doing so to the direction and control of his employer, but being responsible to him for the end to be achieved rather than for the means by which he accomplishes it.

"Such a person is not an agent, in the sense in which that term is here used, and has no authority to bind his employer in any form of contractual dealings. The employer, moreover, in the ordinary case, not having the legal power of control, is not responsible to third persons for the neglects or defaults of the independent contractor occurring in the performance of his undertakings, while he would ordinarily be responsible for like neglects or defaults if the person employed were his servants." 1 Mechem on Agency, § 40, p. 25.

"The independent contractor, also, has usually no authority to employ agents, servants or other contractors for his employer. It is usually of the very essence of this relation, as has been seen, that the independent contractor is to accomplish the results stipulated for, by the employment of his own agents, servants and employees, and that the employer shall not be liable for the negligence or defaults of either the independent contractor himself or of his servants, agents or employees." 1 Mechem on Agency, § 336, p. 250.

■■ Tested by the principles announced in the above authorities, the testimony introduced by the defendant and referred to above was sufficient, prima facie, to support a finding that the truck driver was the servant of the Texas Power & Light Company, who, as independent contractor, undertook to do the work which was being performed by him. And, if that be true, then the truck driver was not the agent of the defendant in doing the work, and therefore the trial court's instruction to the jury on the issue of agency was too broad in its scope, and was erroneous, in that its effect would be to exclude the defense of independent contractor. It is to

be noted further that there was an entire absence of proof that the defendant company ever hired Everetts to perform any service, and therefore there was no proof of relation of master and servant existing between them.

■■ The issue raised by plaintiff's pleading, to the effect that the defendant and the Texas Power & Light Company were in fact one and the same company operating under separate charters for their convenience, and the further alternative issue that they were engaged as partners and that the service performed by the truck driver was done for the use and benefit of the partnership, were not submitted, nor did plaintiff request the submission of the same, and therefore his alleged right of recovery on either of those issues was waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. Some of the testimony introduced by plaintiff was sufficient to make a prima facie showing of the right of recovery except as that proof was overcome by other proof of the character indicated. In view of that showing, we overrule the assignment of error to the action of the court refusing defendant's request for an instructed verdict in its favor.

There are other assignments of error which will not be discussed, since the judgment of the trial court must be reversed and the cause remanded, and the questions presented in those assignments may not rise upon another trial.

For the reasons given, the judgment of the trial court will be reversed, and the cause remanded.