## CARTER PUBLICATIONS, Inc., v. DAVIS.
### No. 1447.

Court of Civil Appeals of Texas. Waco.
Feb. 1, 1934.

Rehearing Denied March 8, 1934.

Thompson & Barwise and Hugh Smith, all of Fort Worth, Frazier & Averitte, of Hillsboro, and Samuels, Foster, Brown & McGee, of Fort Worth, for appellant.

Collins & Martin and R. W. Calvert, all of Hillsboro, for appellee.

ALEXANDER, Justice.

E. H. Davis brought this suit against the Carter Publications, Inc., a corporation, to recover damages for injuries sustained by him as the result of a collision between a motorcycle ridden by him and an automobile driven by one R. C. Heath. The plaintiff alleged that at the time of said collision the said R. C. Heath was the agent and servant of the defendant, and was engaged in delivering newspapers for it. The verdict of the jury was favorable to the plaintiff, and judgment was accordingly entered for the sum of $14,000. The defendant appealed.

The appellant contends that the trial court erred in refusing to give an instructed verdict in its favor because the undisputed evidence showed that the said R. C. Heath, whose negligence caused plaintiff's injuries, was at the time of the collision engaged as an independent contractor in delivering the papers in question and not as a servant of the appellant.

The Carter Publications, Inc., was engaged in the publication of the Fort Worth Star-Telegram, a daily newspaper in general circulation. For the purpose of providing for the delivery of its said newspapers in certain localities, it entered into the following written contract with one Emmett Dickinson:

"This agreement made and entered into this the 15th day of May, 1930, by and between Carter Publications, Inc., a corporation, hereinafter styled First Party, and E. Dickinson, hereinafter styled Second Party: Witnesseth:

"In consideration of the work to be performed or caused to be performed by Second Party as set out herein, First Party agrees to pay to Second Party the sum of $160.00 per month.

"Second Party agrees to procure from First Party at a place or places and at the times agreed upon by the parties hereto, papers published by First Party and deliver the same along a route or routes as follows:

"Fort Worth to Burleson, Joshua, Cleburne, Alvarado, Grandview, Itasca, Covington and Osceola, each morning—Seven days per week.

"Second Party is to provide at his own expense such transportation and help as in his opinion he may need for deliveries of said papers and shall manage and conduct said route above described in such manner as shall be for the best interest of First Party, Second Party to have full power to employ and discharge any or all assistants needed by him.

"Second Party agrees to at all times hold First Party harmless from any action, cause, causes of action, damages, costs, expenses, claims or demands whatsoever in law or in equity, which may arise from or grow out of or in any way be incident to the work to be performed hereunder by Second Party, his employes or agents; it being expressly agreed that Second Party occupies at all times the position of an independent contractor and controls all ways and means relating to the proper performance and completion of this contract, First Party looking to Second Party to obtain the desired results as herein set out.

"It is also agreed by the parties hereto that either party may terminate this contract by giving to the other party ten days' notice in writing of the desire of said party to so terminate the same.

"Witness the hands of the parties hereto this the 15th day of May, 1930.

　　　　"Carter Publications, Inc.,
　　　　　"By Jas. M. Grace, First Party.
　　　　"E. Dickinson, Second Party."

Shortly after entering into the above contract, Dickinson entered into an oral agreement with R. C. Heath by which Heath was to furnish his own automobile and deliver said papers along the route contemplated by the parties, and was to receive therefor one cent per mile and one-half of the profits made

under the contract between Dickinson and the appellant. While the written contract does not specifically designate Hillsboro as one of the towns on the route to which papers were to be delivered, it appears without dispute that Hillsboro was on the route of delivery and that all parties contemplated that the contract should cover and include the delivery of papers to that city. In making delivery of the papers as provided for in the contract Heath usually traveled from Itasca through Hillsboro to Osceola, making delivery of papers at Hillsboro and other towns along the route. Most of the papers were delivered to dealers for sale by them, but there were some customers along the route to whom papers were delivered for their own personal use. On August 10, 1930, while the said R. C. Heath was traveling in his automobile between Itasca and Hillsboro in the course of his work in making delivery of papers, as provided for in the contract, his automobile collided with a motorcycle ridden by Davis, resulting in personal injuries to Davis.

In order to determine whether or not the Carter Publications, Inc., is liable for the negligent acts of R. C. Heath, we must first ascertain whether or not Dickinson, who employed Heath, was a servant of Carter Publications, Inc., or an independent contractor. Restatement of the Law of Agency, c. 1, par. 2, thus defines "master," "servant," and "independent contractor":

"(1) A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

The above definitions are substantially in accord with those adopted and applied by the courts of this state. 23 Tex. Jur. 542; Gulf Refining Co. v. Rogers (Tex. Civ. App.) 57 S. W.(2d) 183, and cases there cited; American National Ins. Co. v. Denke (Tex. Civ. App.) 65 S.W.(2d) 522; Texas Electric Service Co. v. Kinkead (Tex. Civ. App.) 36 S.W.(2d) 1052 (writ refused); National Cash Register Co. v. Rider (Tex. Com. App.) 24 S.W.(2d) 28, par. 3;

Shannon v. Western Indemnity Co. (Tex. Com. App.) 257 S. W. 522.

■ The written contract above set out does not give the employer the control or the right to control with respect to Dickinson's physical conduct, or that of his employees, in the performance of the work provided for in the contract. In fact, it provides that Dickinson shall employ his own help and shall control all ways and means relating to the proper performance and completion of the work provided for in the contract. Clearly, under the terms of the written contract, Dickinson was an independent contractor. Thomas Gall v. Detroit Journal Co., 191 Mich. 405, 158 N. W. 36, 19 A. L. R. 1164; McKinney v. Sherwin-Williams Co. of Texas (Tex. Civ. App.) 271 S. W. 133; Harvey v. Meadowlake Milk Products Co. (Tex. Civ. App.) 27 S.W.(2d) 299; Shannon v. Western Indemnity Co., supra; National Cash Register Co. v. Rider, supra; New York Indemnity Co. v. Industrial Accident Commission (Cal. App.) 287 P. 368; Texas Electric Service Co. v. Kinkead, supra; Southern Surety Co. v. Shoemake (Tex. Com. App.) 24 S.W.(2d) 7; Lone Star Gas Co. v. Kelly (Tex. Com. App.) 46 S.W.(2d) 656; Texas Refining Co. v. Alexander (Tex. Civ. App.) 202 S. W. 131; Ray v. St. Louis Southwestern Ry. Co. (Tex. Civ. App.) 289 S. W. 1030 (writ refused); Pioneer Fireproof Const. Co. v. Hansen, 176 Ill. 100, 52 N. E. 17; note, 19 A. L. R. page 236. Heath was not employed by Carter Publications, Inc. He was employed by Dickinson, the independent contractor. Consequently, the relationship of master and servant did not exist between Heath and the appellant. 39 C. J. 37, par. 8; Walker v. T. & N. O. Ry. Co., 51 Tex. Civ. App. 391, 112 S. W. 430, 433.

■■ The appellee contends that there was evidence sufficient to show that Carter Publications, Inc., actually assumed and exercised control over Dickinson and Heath with reference to their physical conduct in the performance of the labor provided for in the contract, and that by reason thereof Heath became appellant's servant, even though the written contract did not so provide. The evidence most favorable to appellee on this phase of the case is as follows: Mr. Grace, manager of the circulation department of appellant, testified that occasionally he made a casual inspection to see if there were any flat tires on the automobiles that were on hand for use in making delivery of papers; that, if those who had contracts for delivery of papers had been negligent or derelict in handling papers, and had not made delivery

until several hours after the papers were due, he would not have permitted them to continue under their contracts. Mr. Dickinson testified that, before entering into the contract Mr. Grace required assurance from him that a good automobile would be provided for making deliveries; that on one occasion a dealer in Hillsboro complained because the papers were not being delivered at an earlier hour; that Grace took the matter up with Dickinson to ascertain why the papers were not being delivered at the hour demanded by the dealer, and, upon being informed that the papers could not be delivered as early as demanded without injury to the automobile, Grace replied: "If that is the way it is, don't tear up your car." The above evidence is not sufficient to indicate the exercise of such control by the employer as to create the relation of master and servant. Such evidence merely shows that the employer was exercising control to see that the work was being performed and results accomplished according to the terms of the contract. As we understand, an employer has a right to exercise such control over an independent contractor as is necessary to secure performance of the contract according to its terms and to accomplish the results contemplated thereby without thereby creating the relationship of master and servant, so long as the employer does not destroy the employee's power of initiation nor undertake to control the employee in the means and manner of the performance of the work. 14 R. C. L. 68; 23 Tex. Jur. 547; Lone Star Gas Co. v. Kelly, supra; Texas Electric Service Co. v. Kinkead, supra.

The appellee contends that the written contract between Dickinson and appellant was void (a) because it required Dickinson to work on Sunday in violation of the criminal law; and (b) because the contract required Dickinson, who did not have a permit from the railroad commission to do so, to engage in the business of a class B carrier in violation of the terms of the Acts 1929, 41st Leg. c. 314, p. 698. It is appellee's contention in this connection that, if the written contract entered into between appellant and Dickinson is void, it necessarily results that the relationship of master and servant existed between them.

■■ We cannot sustain this contention. In the first place, we do not think that a holding that the contract between Carter Publications, Inc., and Dickinson was void would result in the creation of the relationship of master and servant between such parties. The relationship of master and servant does not spring up of its own accord, but must be created by the parties by mutual agreement either expressed or implied. 39 C. J. 34. The written contract in question evidences the mutual understanding of the parties as to who should control the manner and means of doing the work in question, and, even though it should be held that this contract has broken down because it is in violation of law, such breaking down would not result in the creation of a different understanding between the same parties. If it be conceded that the contract was void and could not be enforced by either party against the other, yet as to third parties it furnished proof of the understanding between the parties thereto as to who should have control over the physical conduct of those who were to perform the work in question. 39 C. J. 1323, § 1527; Smith v. Dryden, 15 Cal. App. 568, 115 P. 455.

■■ In the second place, we do not think the contract was void for either of the reasons contended for by appellee. In our opinion, Acts 1929, 41st Leg. c. 314, p. 698, which has since been amended, was applicable only to common carriers. Dickinson, who contracted to deliver the papers, was not engaged in hauling freight for the public generally. He had no other contract except the one in question, and therefore was not a common carrier within the meaning of the act in question. Hence he was not required to have a permit from the Railroad Commission. Moreover, the contract authorized Dickinson to either make delivery of the papers himself or to otherwise provide for such transportation at his own expense. He actually employed another person to transport the papers. This was within the terms of the contract. The appellant had a right to assume that Dickinson was qualified to transport the papers, as provided for in the contract, or that he would so qualify himself or would employ some one to do the work who was qualified to do so. The contract was not void in this respect.

■ The written contract did require Dickinson or his employees to deliver papers seven days per week, which necessarily included Sunday. The jury, in answer to a special issue, found that it was not necessary that the Fort Worth Star-Telegram be delivered by motor carrier on Sunday to the towns named in the contract. Penal Code, art. 283, makes it an offense to labor on Sunday. Article 284 exempts work of necessity. The Fort Worth Star-Telegram is one of the large daily newspapers in general circulation throughout the state. It is published seven

644

days in the week. There are authorities in other states which hold that as a matter of law the publication—which includes delivery —of a daily newspaper is a work of necessity. Pulitzer Publishing Co. v. McNichols (Mo. Sup.) 181 S. W. 1, L. R. A. 1916C, 1148; State v. Needham, 134 Kan. 155, 4 P.(2d) 464, 82 A. L. R. 493. However, it is not necessary for us to go this far in order to sustain the contract in this case. Penal Code, art. 286, prohibits the sale of merchandise on Sunday. Article 287 exempts from the preceding article the sale of newspapers. In this manner the Legislature has put its stamp of approval upon the sale of newspapers on Sunday. The sale of a newspaper necessarily includes the transportation and delivery thereof. Consequently, the contract was not illegal merely because it required the delivery of newspapers on Sunday.

We think the undisputed evidence shows that Heath was not a servant of the defendant, but was an independent contractor, and consequently the defendant was not liable for Heath's negligence. The trial court should have given an instructed verdict for the defendant. The judgment of the trial court is reversed, and judgment here rendered that the plaintiff take nothing.