In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-050 CR


____________________



CRAIG HUDSON, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 91693 






MEMORANDUM OPINION


 Following a bench trial, appellant, Craig Hudson, appeals a conviction for
aggravated kidnapping. On appeal, Hudson asserts that the trial court abused its discretion
in failing to hold a hearing on Hudson's motion for new trial and that trial counsel
rendered ineffective assistance of counsel. We affirm.



BACKGROUND


 Hudson forced his way into a car that his wife, Jacqueline Prevost ("Prevost"), (1) was
driving on November 10, 2003, and drove off with Prevost in the car. Hudson and
Prevost were separated at the time of the incident. Prevost testified that Hudson held her
against her will for some period of time, threatening her and nicking her with a knife. 
Hudson waived his right to a jury trial. On January 10, 2007, the case was tried in a
bench trial. While on the stand Hudson admitted to the prior conviction in the
enhancement paragraph of the indictment. The court found Hudson guilty of aggravated
kidnapping and sentenced him to twenty-five years in the Institutional Division of the
Texas Department of Criminal Justice.

 In two issues, Hudson argues that (1) the trial judge abused his discretion in denying
Hudson's motion for new trial without holding a hearing on the motion; and (2) Hudson's
trial counsel rendered ineffective assistance of counsel at the punishment phase of trial
because he did not obtain an instruction or ruling on whether Hudson met his burden of
proof under section 20.04(d) of the Texas Penal Code.



MOTION FOR NEW TRIAL


 The right to a hearing on a motion for new trial is not an absolute right. Reyes v.
State, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). "[A] hearing is not required when
the matters raised in the motion for new trial are subject to being determined from the
record." Id. at 816. However, "when an accused presents a motion for new trial raising
matters not determinable from the record, upon which the accused could be entitled to
relief, the trial judge abuses his discretion in failing to hold a hearing . . . ." Id. As a
further prerequisite, the motion must be properly supported by affidavits specifically
showing the truth of the grounds alleged as a basis for new trial. Watson v. State, 37
S.W.3d 559, 561 (Tex. App.--Beaumont 2001, no pet.). The affidavits must state facts
that, if true, would entitle defendant to a new trial. Clark v. State, No. 09-06-230-CR,
2007 WL 4953634, at *1 (Tex. App.--Beaumont Feb. 27, 2008, no pet.) (not designated
for publication).

 Hudson asserted two grounds in his motion for new trial. He contended that his
jury waiver was involuntary because he entered the waiver with the understanding that his
case would be expedited and the jury trial waiver would act as a request for a speedy trial. 
In the second ground he contended that the evidence presented to the court may have been
tainted and the veracity of the complaining witness was lacking based on a possible
undisclosed deal between the prosecutor's office and the complaining witness.

 The record shows that Hudson signed a written waiver of his right to a jury trial. 
In addition, the reporter's record of the hearing at which Hudson waived a jury trial
reflects the discussion that took place between the Court, trial counsel, and Hudson
regarding the timing of a bench trial versus a jury trial, as well as admonishments given
by the Court prior to accepting Hudson's jury waiver. The Court expressed its opinion
that the case would be put on the docket much faster with a bench trial, and would almost
"certainly be put on a docket faster than 30 days." At the hearing, Hudson's trial counsel
expressed concern in making sure that Hudson was not misled with respect to timing of a
bench trial, stating "[s]ometimes we don't get to the cases because of . . . things that are
going on. I don't want him to say we've misled him." The Court agreed and expressly
stated that it was "not going to guarantee" anything other than the fact that the case would
be set for trial.

 Additionally, the record establishes that Hudson was fully admonished by the trial
court regarding the consequences of waiving his right to a jury trial and stated that he
understood those consequences. The reporter's record contains the following exchange: 
 [TRIAL COUNSEL]: If the Judge accepts this -- once the Judge accepts this,
it cannot be withdrawn. Do you understand?


 THE DEFENDANT: Yes, sir.


 . . . .


 THE COURT: And do you fully understand that, by signing this waiver,
you're giving up your right to a trial by 12 jurors, you're giving up your
right to ask those 12 people to pass whether you're guilty or not and once
you give up that right, I'm going to make that determination and I'm going
to decide what punishment you get, if I do find you guilty?


 THE DEFENDANT: Yes, sir.


 THE COURT: Understanding all that, do you still want to waive your right?


 THE DEFENDANT: Yep.


 THE COURT: I accept this. That's been signed by [the] State and your
attorney. I just want to make sure you understand that if you come back
down here, on the 14th or whatever day we go on this case, you can't say,
"I now want a jury," because I'm going to hold you to this.


 [TRIAL COUNSEL]: One other thing: We've discussed this case. This is
what we term under the law a 3-G offense. And you understand -- I've
explained to you what the Court can do if you're found guilty of the offense. 
You cannot get probation.


 THE DEFENDANT: Right.


 THE COURT: Have a good day.


 Hudson filed an affidavit in support of his Motion for New Trial, stating that his
understanding was that the waiver would get him to trial within forty-five days. He further
asserted that "[t]he voluntariness of [his] wavier (sic) was base[d] on representation[s] by
the court that [he] would have a speedy trial." The record sets forth the representations
made by the court and trial counsel at the time of Hudson's jury waiver. Additionally, all
requests for a speedy trial and all re-sets are established by the record. We hold that a
hearing was not required to determine the first ground asserted in Hudson's Motion for
New Trial. The fact that Hudson knowingly and voluntarily waived his right to a jury trial
can be determined from the record.

 Under the second ground asserted in his Motion for New Trial, Hudson contended
that the veracity of the complaining witness, Prevost, was lacking based on a possible
undisclosed deal between the Prosecutor's Office and Prevost. Hudson submitted a
supporting affidavit setting forth the facts upon which he relied. Hudson asserted two
primary supporting facts: (1) that Prevost had stated in a letter to Hudson that "8 years
turn[ed] into 4 months for out standing (sic) charges that she was facing;" and (2) Prevost
had stated in a letter to Hudson's attorney dated December 19, 2004 that she was not going
to testify, however, ultimately testified at trial. According to Hudson, based on these facts
"it [was] evident that a deal was worked out for her testimony . . . ."

 The fact that no undisclosed deal (2) existed between Prevost and the State can be
determined from the record. First, a complete copy of the letter Hudson references in his
affidavit appears in the record attached to his motion for new trial. A full reading of the
letter makes clear that Prevost's letter references time she served in state jail prior to
meeting Hudson and prior to the events in question. (3) Second, Prevost testified at
trial regarding her prior criminal history. On direct examination, Prevost testified about
the four months she served for her "check writing problem," which she referenced in her
letter to Hudson. Prevost further testified that she had not received any other convictions
since 1999. In addition, Hudson's attorney was given the opportunity to cross-examine
Prevost regarding her criminal history and did so. She testified regarding her 1999
probation revocation as well as misdemeanors she had prior to that. There is nothing in
the record to indicate that Prevost faced any criminal charges after her probation
revocation in 1999. Therefore, the court could have concluded, based on the record, that
Prevost had no outstanding charges on which any alleged deal with the State could have
been based.

 Prevost also testified at Hudson's trial regarding her initial representation that she
would not testify and ultimately her decision to testify at trial. Prevost testified that she
sent Hudson's attorney a letter stating that she was not going to testify because Hudson
asked her not to testify and asked her to write a letter to his lawyer stating the same. 
Prevost explained that she changed her mind about testifying because she felt she was
being manipulated by Hudson and that she just wanted to get the whole thing behind her. 
We hold that the second matter raised in Hudson's Motion for New Trial was determinable
from the record.

 Hudson had the opportunity at trial to question Prevost regarding her criminal
history and to fully develop any potential bias in Prevost's testimony, such as a deal with
the State. Hudson's attorney cross-examined Prevost during the trial. To the extent
Hudson failed to fully develop any bias of the complaining witness at trial by questioning
her regarding any possible deals with the State, he waived appellate review by not doing
so. See Hadley v. State, No. 09-96-025 CR, 1997 WL 7548, at *1-3 (Tex. App.--Beaumont Jan. 8, 1997, no pet.) (not designated for publication). We hold the trial court
did not abuse its discretion in denying Hudson's motion for new trial without a hearing. 
We overrule issue one.

INEFFECTIVE ASSISTANCE OF COUNSEL


 In his second issue, Hudson contends that trial counsel rendered ineffective
assistance at the punishment phase of trial because counsel did not obtain an instruction or
ruling on the mitigating circumstance of voluntary release in a safe place, under section
20.04(d) of the Texas Penal Code. Under section 20.04(d), at the punishment stage of a
trial on aggravated kidnapping "the defendant may raise the issue as to whether he
voluntarily released the victim in a safe place." Tex. Pen. Code Ann. § 20.04(d) (Vernon
2003). "If the defendant proves the issue in the affirmative by a preponderance of the
evidence, the offense is a felony of the second degree." Id.

 To prove ineffective assistance of counsel, appellant must show that (1) trial
counsel's representation fell below an objective standard of reasonableness, based on
prevailing professional norms; and (2) the result of the proceeding would have been
different but for the trial counsel's deficient performance. Strickland v. Washington, 466
U.S. 668, 688-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on his claim,
Hudson must first prove that trial cousel's representation was deficient. Id. at 687. In
other words, "the defendant must prove, by a preponderance of the evidence, that there
is, in fact, no plausible professional reason for a specific act or omission." Bone v. State,
77 S.W.3d 828, 836 (Tex. Crim. App. 2002). We first determine whether it was
reasonable for Hudson's trial counsel not to request an instruction or obtain a ruling from
the trial court on whether Hudson satisfied his burden of proof under section 20.04(d).

 Rarely will a reviewing court be able to fairly evaluate the merits of an ineffective
assistance of counsel claim on direct appeal. Salinas v. State, 163 S.W.3d 734, 740 (Tex.
Crim. App. 2005) (citing Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App.
1999)). "'In the majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel's actions.'" Id. (quoting Mallett v.
State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001)). When faced with a record that does
not indicate trial counsel's strategy and tactics, we may not speculate as to why counsel
pursued a particular course of action. Flowers v. State, 133 S.W.3d 853, 857 (Tex. App.--Beaumont 2004, no pet.) (citing Ex parte Varelas, 45 S.W.3d 627, 632 (Tex. Crim. App.
2001)). The more appropriate vehicle to raise ineffective assistance of counsel claims is
an application for writ of habeas corpus. Rylander v. State, 101 S.W.3d 107, 110 (Tex.
Crim. App. 2003) (citing Mitchell v. State, 68 S.W.2d 640, 642 (Tex. Crim. App. 2002)). 
 Hudson contends that a safe release finding was mandated by the evidence. We
disagree. We hold that a reasonable attorney could have concluded that Prevost was not
voluntarily released in a safe place. The Texas Court of Criminal Appeals recently
clarified the meaning of "voluntarily" under section 20.04(d). The Court rejected a broad
interpretation of "voluntarily" in favor of a narrow interpretation, "such as the absence 'of
rescue by the police [or others] or escape by the [kidnap] victim.'" Brown v. State, 98
S.W.3d 180, 187-88 (Tex. Crim. App. 2003)(citing Model Penal Code § 212.1 cmt. at
233-34) (requirement that release be "voluntary" means that "rescue by the police or
escape by the victim" will not reduce the punishment level of the offense.).

 "The cases determining when a kidnapper voluntarily releases the victim in a safe
place require the kidnapper to release the victim without any element of rescue or escape." 
Cooks v. State, 169 S.W.3d 288, 291 (Tex. App.--Texarkana 2005, pet. ref'd). When a
victim is released or abandoned as a result of police intervention or confrontation, the
defendant's conduct likely will not rise to the level of "voluntary release" under section
20.04(d). See Ballard v. State, 193 S.W.3d 916, 919 (Tex. Crim. App. 2006)(appellant
did not voluntarily release victim where she did not extricate herself until police directly
intervened); see also LaHood v. State, 171 S.W.3d 613, 624-25 (Tex. App.--Houston
[14th Dist.] 2005, pet. ref'd) (Victim was released from custody of kidnapper only after
his vehicle was pulled over by a police officer and he was arrested); Fowler v. State, 958
S.W.2d 853, 860 (Tex. App.--Waco 1997), aff'd, 991 S.W.2d 258 (Tex. Crim. App.
1999) (victim was not "released" where he surrendered to police and left victim unharmed
inside hotel room); Oestrick v. State, 939 S.W.2d 232, 238-39 (Tex. App.--Austin 1997,
pet. ref'd) (no voluntary release in a safe place where defendant abandoned victim in his
truck in an attempt to escape after being surrounded by police). Such circumstances are
more analogous to a rescue or escape, and will prohibit a finding of voluntary release. See
Brown, 98 S.W.3d at 188.

 Here it is undisputed that Hudson did not release Prevost until he was confronted
by a police officer, at which time Hudson abandoned Prevost in an effort to evade capture. 
Prevost testified that after Hudson drove back into Port Arthur, the car was spotted by a
police officer who turned on his lights in an effort to pull Hudson over. Hudson, however,
attempted to lose the officer by speeding up, while the officer continued in pursuit of the
vehicle. Eventually, Hudson pulled into a driveway but was unable to back out because
of transmission problems with the vehicle. The police officer was able to block the car in
the driveway, at which time Hudson got out of the car and ran, leaving Prevost in the
vehicle. Hudson was ultimately apprehended by police in a nearby alleyway.

 We hold that a reasonably competent lawyer could have concluded under the
circumstances of this case that the release of Prevost was not "voluntary," but was more
akin to a rescue. See Ballard, 193 S.W.3d at 919; see also LaHood, 171 S.W.3d at 625; 
Fowler, 958 S.W.2d at 860; Oestrick, 939 S.W.2d at 239. Additionally, we note that a
reasonably competent lawyer may also have concluded that Prevost was not released in a
"safe place." See Oestrick, 939 S.W.2d at 239 (such a tense and potentially volatile
situation existed where victim was abandoned that it could hardly be said to be a "safe
place" as a matter of law); see also McLaren v. State, 104 S.W.3d 268, 274 (Tex. App.--El
Paso 2003, no pet.)(no error where court could have found that a volatile situation existed
in the area where victims were released). Thus, trial counsel's failure to obtain a ruling on
whether defendant met his burden under section 20.04(d) or request an instruction in a
bench trial, was not ineffective assistance of counsel. See Ex parte Chandler, 182 S.W.3d
350, 356 (Tex. Crim. App. 2005). We overrule issue two. Having overruled both of
appellant's issues, we affirm the judgment of the trial court.

 AFFIRMED. 

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on February 14, 2008

Opinion Delivered October 29, 2008

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. After she divorced Hudson in April 2004, Jacqueline reclaimed her maiden name
Jacqueline Prevost. For ease of reference we will refer to her as "Prevost" in this opinion.
2. On appeal Hudson emphasizes the fact that prior to trial, he and his attorney made
both written and oral requests for the State to disclose any agreement they may have with any
witness that may testify.
3. Prevost stated in pertinent part:

 

 Maybe I can help you find God like I have and when that happens, your prayers get
through and something good may happen. Remember when I met you and told you
my story. Craig I was looking at 8 years in state jail. But the minute I knew this thing
was too big for me I surrendered my all to God. I allowed him to take my problem,
handle it as he saw fit, and let him know that I was willing to go through any thing
[sic] he needed me to go through he created a miracle in my life. 8 years turned into
4 months. Not only did he work it out for me but he gave the faith I needed to trust
him for all things today.